[No. 13847.   In Bank. — August 5, 1890.]

THE PEOPLE EX REL. GEORGE A. JOHNSON, AT-TORNEY-GENERAL, APPELLANT, v. B. F. BAGLEY ET AL., RESPONDENTS.

CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS — SUBJECTION TO GEN-ERAL LAWS — CHANGE FROM GENERAL TO SPECIAL CHARTER. — The rule that municipal corporations are subject to the control of general laws does not so apply that a charter framed under the general act of March 13, 1883, shall prevent a change to a special charter adopted pursuant to section 8 of article 11 of the constitution.

ID. — PERMISSIVE STATUTE — MANDATORY PROVISIONS — EXTINGUISHMENT OF CHARTER. — The provision of the statute of March 13, 1883, providing for the organization, incorporation, and government of municipal corporations, although a general law, is permissive, and until its terms are accepted does not require corporations falling under its classes to organize, but tenders separate charters, and permits any one of them to be selected as the charter of a city at the election of those who come within its purview; but when its terms are accepted, that portion of the act relating to the municipality created under it becomes mandatory, and

governs such municipality until it is extinguished by being changed into one of a different class under the act, by consolidating with some other one, or into one incorporated under section 8 of article 11 of the constitution.

ID. — SUBJECTION OF STATUTES TO CONSTITUTION — POWER OF LEGISLATURE — CHANGE OF MUNICIPAL CHARTER. — Statutes passed under a constitution are subject to and must be controlled by it, and can neither enlarge nor diminish its scope; and the legislature cannot abridge the power given by section 8 of article 11 of the constitution to cities of a certain population, to change their form of government conformably to it.

ID. — CHARTER OF CITY OF STOCKTON — CITY OF FOURTH CLASS — ADOPTION OF SPECIAL CHARTER — GENERAL CHARTER SUPERSEDED — CHANGE OF CITY COUNCIL. — When the city of Stockton organized as a city of the fourth class under the permissive act of March 13, 1883, that act then, so far as it applied to cities of that class, became the mandatory organic law of the city, and remained so until the legislature approved a new and different charter adopted by the electors of the city pursuant to the amendment to section 8 of article 11 of the constitution, and such new charter, when approved by the legislature, entirely superseded the former charter under the act of 1883, and the city of Stockton, as a city of the fourth class, ceased to exist, and passed out of and beyond the scope of the act of 1883, and the council elected under the new charter become the proper council of the city, as against the council elected under the act of 1883.

APPEAL from a judgment of the Superior Court of San Joaquin County.

The facts are stated in the opinion of the court.

*Attorney-General Johnson,* and *Carter & Smith,* for Appellant.

*F. T. Baldwin,* and *E. I. Jones,* for Respondents.

GIBSON, C. — This appeal is from a judgment entered for defendants upon stipulated facts in a *quo warranto* proceeding prosecuted by the attorney-general against them to determine their right to exercise the official powers and functions of the city council of the city of Stockton, of which they claimed and were adjudged by the trial court to be the duly constituted members.

The city of Stockton was, prior to the adoption of the constitution of 1879, duly incorporated under a special

charter, and continued to exist as such thereunder until the seventeenth day of December, 1884. On the latter date, it became organized as a municipal corporation of the fourth class, pursuant to the provision of an act approved March 13, 1883, and entitled: "An act to provide for the organization, incorporation, and government of municipal corporations." (Stats. 1883, p. 93.)

The city, under that act, maintained its corporate organization until the second day of March, 1889, when its present charter, framed by its freeholders and adopted by its electors, in accordance with and pursuant to the amendment to section 8 of article 11 of the constitution of this state, was approved by the legislature (Stats. 1889, p. 577), and thereby became the organic law of the city in place of the act of March 13, 1883.

The portion of the last-mentioned act relative to the city of Stockton provides that the city council shall consist of the mayor and twelve councilmen, seven of whom shall constitute a quorum for the transaction of business. (See secs. 601, 620, 621.) On the first day of January, 1888, by virtue of prior municipal elections regularly held, twelve persons named in the complaint, other than the defendants became the duly qualified members of the city council under said act, and entered upon the discharge of their duties as such officers. Since then, of the said twelve persons, one has died and one has resigned, but as no successor to any of the twelve has been elected or appointed, it is stipulated that unless the defendants elected under the present charter are the legal councilmen and collectively constitute the city council, then the remaining ten of the first twelve councilmen are the legal councilmen of the city.

The present charter, which, as we have seen, went into effect March 2, 1889, provides that the city council shall consist of five members. At the first municipal election held under it, the five defendants were duly elected, and within the proper time duly qualified as members of such

city council; and on the tenth day of June, 1889, they each entered upon the office of member of the city council, and began and still continue to claim and exercise the powers and functions of such office, and collectively since then have claimed to constitute the city council of said city, and have exercised all its powers and functions.

Thus we perceive there are two sets of persons claiming to be the councilmen of the city, and to form the city council thereof.

The only question arising then is, Which of these two sets is the proper one? The persons claiming to be the councilmen under the act of March 13, 1883, were, as conceded, the *de jure* councilmen of the city from the first Monday in January, 1888, until the defendants were elected and qualified to act under the new charter; and unless the first set of councilmen was superseded as such councilmen by the defendants, they still continue to be such *de jure* officers.

The position of the appellant is, that the act of March 13, 1883, is a general law, and conflicts with the provisions of the present charter in relation to city councilmen; and as section 6 of article 11 of the constitution provides that " cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws," the act of March 13, 1883, must prevail; and he cites, in support of his position, *Ex parte Ah You,* 82 Cal. 339; *People* v. *Henshaw,* 76 Cal. 436; *Thomason* v. *Ashworth,* 73 Cal. 73.

There is no doubt, and it is not disputed, that the conflict mentioned exists. The act of March 13, 1883, provides for twelve councilmen, seven of whom are necessary to make a quorum for the transaction of business, while the freeholders' charter provides for but five councilmen in all, or two less than the requisite number for a quorum under the act referred to; hence they are incompatible with each other, and if the plaintiff's position is

correct, then the freeholders' charter in this respect must yield to that statute. The statute in question, as can be seen from its title, above quoted, provides for the organization, incorporation, and government of municipal corporations. Under it six separate and distinct classes of such corporations, as defined in the act of March 2, 1883 (Stats. 1883, p. 24), may be organized. It embraces all the municipal corporations that can be created in the state, except those specially provided for in section 8 of article 11 of the constitution, and is as comprehensive as the subject admits of under the constitution, and is therefore a general law within the principle of *Thomason* v. *Ashworth*, 73 Cal. 73, and the cases there cited. But although it is a general law, we are convinced that it differs from the general laws held in the above cases cited by plaintiff to effect municipal corporations, whether organized before or after the adoption of the constitution of 1879.

An examination of those cases shows that each of the statutes therein considered was mandatory, and in this respect differs materially from the statute of 1883. The statute in question is permissive. Until its terms are accepted, it does not require corporations falling within any one of its six classes to organize, but tenders six separate charters, and permits any one of them to be selected as the charter of a city, at the election of those who come within its purview. This is apparent from the first section of the act, which reads as follows: "Any portion of a county containing not less than five hundred inhabitants, and not incorporated as a municipal corporation, may become incorporated under the provisions of this act, and when so incorporated shall have the powers conferred, or that may be hereafter conferred, by law upon municipal corporations of the class to which the same may belong." And also section 4, which provides that any municipal corporation organized prior to January 1, 1880, may reorganize under the act. But

when its terms are accepted, that portion of the act relating to the municipality created under it becomes mandatory, and governs such municipality until it is extinguished by being changed into one of a different class under the act by consolidating with some other one, or into one incorporated under section 8 of article 11 of the constitution.

We have seen that the city of Stockton elected to and did accept, under the act in question, the charter provided for cities of the fourth class. Now, if the contention of appellant be correct, the city thereby adopted a charter that precludes it from enjoying the benefit of its present or any other charter whose provisions may be inconsistent with those pertaining to a city of the fourth class. Statutes passed under a constitution are subject to and must be controlled by it. They can neither enlarge nor diminish its scope. Therefore the legislature could not abridge the power given in the amendment to section 8 of article 11 of the constitution to cities containing a population of more than ten thousand and less than one hundred thousand people to change their form of government conformably to it. And to hold that any city charter framed, adopted, and approved thereunder must be subject to and controlled by the previous charter of the city, when it exists in the form of a general law, to the extent that the latter may conflict with the former, would clearly be such an abridgment. The freeholders' charter, to the extent of such a conflict, would be a delusion that the legislature, if it had the power to affect the constitution, could not be said to have intended.

It might, in like manner, be argued that, because the charter adopted by a municipality organized under the act of 1883 is a general law, and would be operative against any subsequent charter of the city if it should consolidate with some other or like municipal corporation, which may be done pursuant to section 4 of the

same act, its new charter would have to be consistent with the old one, or be controlled by it. To attempt to so control the new charter of such a municipality in accordance with the rule contended for would, in effect, render section 4 of the act impossible to follow, and therefore nugatory; particularly so if both of the cities attempting to consolidate should have charters of a different class under the act of 1883, and should try to consolidate as a city of a class different from either, as they might do under the same section of the law.

We think the results pointed out which would follow from bringing the act of 1883 within the rule urged by plaintiff are sufficient to show that it does not apply here. It seems clear to us that when the city of Stockton organized as a city of the fourth class under the permissive act of March 13, 1883, that act then, as far as it applied to cities of that class, became the mandatory organic law of the city, and remained so until the legislature approved a new and different charter adopted by the electors of the city pursuant to the amendment to section 8 of article 11 of the constitution. And that the new charter, when it was approved by the legislature, entirely superseded the former charter under the act of 1883. This being so, the city of Stockton as a city of the fourth class ceased to exist, and passed out of and beyond the scope of the act last mentioned.

It therefore follows that the judgment should be affirmed.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is affirmed.