STREAT *v.* VERMILYA.

1. MUNICIPAL CORPORATIONS—CITY CHARTER COMMISSION—POWERS.
   Under home rule act a city charter commission has power and authority to frame a proposed charter for the city and provide for its submission to electors for adoption or rejection, including fixing a time therefor (1 Comp. Laws 1929, § 2256).

2. SAME—CHARTERS—OFFICES.
   A proposed new charter, if adopted, entirely supersedes former charter and abolishes offices thereunder as a city may not have two separate and distinct charters at the same time.

3. SAME—STATE AGENCIES.
   Cities are municipal corporations deriving their powers from the State and are its agencies for carrying on local government (1 Comp. Laws 1929, §§ 2228–2274).

4. SAME—CHARTERS AS ORGANIC ACTS.
   A city charter is the organic law of the city and is to be considered the same as other organic acts.

5. SAME—IMPLIED POWERS.
   Power of city electors to adopt proposed charter carries with it the implied power and authority to provide the city government which shall function thereunder, if adopted, and, in absence of constitutional or legislative limitation, electors may provide for election of officers.

6. SAME—SIMULTANEOUS SUBMISSION OF PROPOSED CHARTER AND ELECTION OF OFFICERS THEREUNDER.
   Provision of proposed charter for its submission for ratification or rejection by qualified electors in home rule city and election of officers as provided for therein at same special election *held*, constitutional and valid.

---

7. MANDAMUS— MUNICIPAL CORPORATIONS— ELECTIONS— EMERGENCY
—COURT RULES.

> Writ of mandamus is ordered to issue to dissolve injunction and permit election of officers under proposed charter to be submitted at same special election, as provided for emergency under Court Rule No. 60, §§ 4, 5 (1933).

Appeal from Genesee; Black (Edward D.), J. Submitted May 29, 1934. (Calendar No. 37,928.) Decided June 8, 1934.

Bill by Frank R. Streat against Ned Vermilya, Flint city clerk, and another to enjoin election of city officers under a proposed charter at special election at which charter is to be submitted. Decree for plaintiff. Howard Polzin intervened as party defendant and reviews decree on application for leave to appeal. Mandamus granted pursuant to Court Rule No. 60, §§ 4, 5 (1933).

*Carton & Gault* and *M. Davison, Jr.,* for plaintiff.

*Frank G. Millard,* for defendant Vermilya.

*Edward N. Barnard,* for defendant Polzin.

POTTER, J. This case is here under Court Rule No. 60, §§ 4, 5 (1933), which provide:

"SEC. 4. On showing of emergency, of appellant's due diligence, and of the character of injury to him through observance of the above practice on application for leave to appeal, application may be made on *ex parte* statement of fact, showing of merit, and on proof of such notice to other parties as the circumstances permit, or excuse for lack of notice; and immediate consideration of the application may be prayed.

"SEC. 5. Upon such application the court, in lieu of leave to appeal, may in its discretion order issuance of the proper original writ."

The application is for leave to appeal from an order granting an injunction restraining an election of city officers on June 4, 1934, in the city of Flint, to take office under the proposed new charter if adopted. The case is presented under the sections of Court Rule No. 60 (1933), above quoted, which provide that upon application to appeal, in case of emergency, the court may in lieu of granting leave to appeal, issue its original writ. and the case will be treated and disposed of as upon application for a writ of mandamus to direct the dissolution of the injunction restraining the election called as above indicated.

Flint is a city organized under a charter adopted in pursuance of the home rule act (Act No. 279, Pub. Acts 1909, as amended, 1 Comp. Laws 1929, §§ 2228-2274) providing for the incorporation of home rule cities. In pursuance of the home rule act a charter commission was selected in the city of Flint, and it prepared and proposed for adoption a new charter for the city. The proposed charter is to be submitted for adoption or rejection to a vote of the electors of the city to be held June 4, 1934.

Section 224 of the proposed charter provides:

"This charter shall be submitted to the electors of the city of Flint, Michigan, for their approval or rejection at a special election on June 4, 1934."

Section 225 of the proposed charter provides:

"There shall be elected at said special charter election one mayor from the city at large, and one alderman from each of the ten wards designated and provided for herein," etc.

The latter provision of the proposed charter is attacked as unconstitutional, invalid and incapable of being obeyed or enforced.

City charters in Michigan were formerly special legislative enactments. This was true when Michigan was a territory, and for many years after it became a State. Public sentiment demanded uniformity in powers and duties in cities and villages, thus making possible unified judicial construction, and, it was claimed, a consequent saving of expense. In 1895, a uniform village charter act (Act No. 3, Pub. Acts 1895, 1 Comp. Laws 1929, § 1465 *et seq.*) was adopted by the legislature and a uniform city charter act (Act No. 215, Pub. Acts 1895, 1 Comp. Laws 1929, § 1796 *et seq.*), providing for the incorporation of cities of the fourth class. The people were not satisfied with the results attained under the so-called uniform charter provisions, and in the constitutional convention of 1908 home rule was demanded, that is, the right of cities to frame and adopt their own charters. The constitutional convention compromised between these two ideas by giving cities the right to frame, adopt and amend their charters, subject, however, to certain broad general restrictions and limitations fixed by the legislature in the so-called home rule act.

The proposed city charter provides for its submission to the qualified electors of the city of Flint on June 4, 1934, for ratification or rejection, and an election is proposed at the same time of the city officers named therein who, if the charter is adopted, will take office. This is said to be unconstitutional and invalid in that it provides for the election of persons to office when it has not yet been determined such offices shall be created by the adoption of the proposed charter.

Article 8, § 20, of the Constitution provides the legislature shall provide by a general law for the incorporation of cities; and article 8, § 21, provides that under such general laws the electors of each

city shall have power and authority to frame, adopt and amend its charter. In pursuance of this constitutional mandate, the legislature enacted Act No. 279, Pub. Acts 1909.

"It intended to, and did, pass a general law, giving to the electors of cities power to frame, adopt, and amend charters. To that act it gave the title under consideration. It provides for the 'incorporation of cities.' What cities? Obviously *all* cities—as well those already incorporated as those not yet incorporated, since there are no words of qualification or limitation. Every incorporated city must have a charter. Its charter is the definition of its rights and obligations as a municipal entity, so far as they are not otherwise legally granted or imposed. The very act of incorporation, therefore, necessarily includes the idea of a charter and the power to frame and adopt one. If the framing and adoption of a charter *in toto* is fairly within the meaning of the word 'incorporation' and we believe it necessarily is so, it seems clear that the revision of a charter already adopted is likewise within that meaning upon the principle that the greater includes the less." *Jackson Common Council* v. *Harrington,* 160 Mich. 550.

There seems to be no question but that under the home rule act for cities a charter commission has full power and authority to frame a proposed charter for the city and provide for its submission to the electors for adoption or rejection. 1 Comp. Laws 1929, § 2256, confers express authority upon the charter commission to fix a time of submission of the same to the electors.

A city may not have two separate and distinct charters at the same time. *Butler* v. *Walker,* 98 Ala. 358 (13 South. 261, 39 Am. St. Rep. 61). The proposed new charter, if adopted, will entirely supersede the former charter. *People, ex rel. Johnson,*

*Attorney General,* v. *Bagley,* 85 Cal. 343 (24 Pac. 716). The absolute and unconditional supersession of the present charter of the city by the proposed charter, if adopted, will abolish all offices under the present charter. *People, ex rel. Fowler,* v. *Brown,* 83 Ill. 95, it being the purpose and object of the proposed charter, if adopted, to completely supersede the present form of city government with all its officers and to substitute a new form of government in which the power of the city government will be vested in new officers. *Adler* v. *Jenkins,* 33 Okla. 117 (124 Pac. 29). The right to frame and adopt a charter for the city is conferred by the Constitution. The power to adopt, amend and repeal the existing charter is granted by the home rule act for cities. To effect the constitutionally designated purposes, the legislature provided for the creation of a charter commission which has the power to frame a proposed charter and to fix the time when the proposed charter will be submitted to the electors of the city for adoption or rejection. There is nothing in the present charter of the city or in the home rule act for cities which provides for the selection of officers under the proposed charter, if adopted. Cities are municipal corporations, deriving their powers from the State,—State agencies for carrying on local municipal government; but within the range of the Constitution and the general home rule act for cities, the electors thereof may make, alter, amend, revise or repeal the charter of the city, which is the organic law of the city, and to be considered as other organic acts are considered. *St. Louis* v. *Western Union Telegraph Co.,* 149 U. S. 465 (13 Sup. Ct. 990).

"The city is a miniature State, the council is its legislature, the charter is its Constitution." *Paulsen* v. *Portland,* 149 U. S. 30 (13 Sup. Ct. 750).

The adoption of the proposed charter by the electors of the city would be form without substance, if the electors have not the power to provide for the election of officers under the proposed charter if adopted, and the organization and functioning of the city government thereunder. The power of the electors to adopt the proposed charter carries with it the implied power and authority to provide the government of the city shall function under the proposed charter, if adopted, and in the absence of constitutional prohibition or legislative limitation it was the right and the duty of the electors of the city to provide for the election of officers under the proposed charter to take office in case of its adoption. Recourse is had to the electors of the city.

"According to the theory of our government, the sovereign power is in the people." *In re Spangler,* 11 Mich. 298, 308.

They may make and unmake home rule charters for cities and make and unmake public offices. As a necessary incident to the broad powers expressly granted by the Constitution and the home rule act for cities to the electors of a city, the electors of the city of Flint have the implied power to provide for the effective functioning of the new government under the proposed charter, if adopted, because the greater power necessarily includes the lesser.

Section 9 of the schedule of the Constitution of 1835 provided:

"This Constitution shall be submitted, at the election to be held on the first Monday in October next, and on the succeeding day, for ratification or rejection, to the electors qualified by this Constitution to vote at all elections; and if the same be ratified by the said electors, the same shall become the Constitution of the State of Michigan."

Section 6 of the schedule of the Constitution of 1835 provided:

"The first election for governor, lieutenant governor, members of the State legislature, and a representative in the congress of the United States, shall be held on the first Monday in October next, and on the succeeding day."

The same provision in principle was contained in the Constitution of 1835 as is contained in the proposed charter of the city of Flint, that is, the proposed Constitution of 1835 provided for the election of the members of the State legislature, governor, lieutenant governor and representative in congress on the same day the Constitution was submitted to the qualified electors for ratification or rejection. There is nothing in the home rule act for cities which prohibits voting for the adoption or rejection of a proposed charter and at the same election voting for the city officers who will take office thereunder, in case such charter shall be adopted.

1 Comp. Laws 1929, § 2251, governing the incorporation of new cities, provides that the charter commission,

"Shall provide the manner of nominating the candidates for the first elective officers provided in the proposed charter. It shall fix the date of the first city election, and do and provide all other things necessary for making such nominations and holding such election. Such election may be held at a special election or on the same date as a general election."

A question similar to that in issue here was before the supreme court of Nebraska in *State, ex rel. Thompson, Attorney General,* v. *Winnett,* 78 Neb. 379 (110 N. W. 1113, 10 L. R. A. [N. S.] 149, 15 Ann.

Cas. 781). It was proposed to amend the Constitution of the State of Nebraska to provide for a State railway commission and to elect, at the same election at which the proposed constitutional amendment was submitted for adoption or rejection, the railway commissioners. The question was there raised that is in principle raised here. The supreme court of Nebraska said:

"The next objection to the validity of the amendment suggested by the attorney general is that there was no authority for electing State railway commissioners, and that no such office existed at the time of the general election in 1906. Upon the first proposition, it is sufficient to say that the Constitution provides that, when an amendment is proposed by the legislature, the same shall be submitted to the electors for approval or rejection at the next election of senators and representatives, and, as to the manner of submitting it, prescribes only that, 'when more than one amendment is submitted at the same election, they shall be so submitted as to enable the electors to vote on each amendment separately.' Section 1, art. 15, above quoted. If the amendment has been submitted to the voters at the general election specified, and the manner of its submission does not violate the only limitation which the Constitution provides, it may well be presumed that the intention of the Constitution is that it shall be submitted as other questions are, and that the legislature intended that the means of ascertaining the will of the people upon other questions at the general election at which it is required to be submitted should be employed. It will be conceded that, where there is no office, there can be no officer. Constitutions and amendments thereto are created by the vote of the people, and not by a canvass of that vote, nor by the official declaration of the result. If this amendment was adopted, it was when a majority

of the electors had voted in its favor, and, when that occurred, it became a part of the Constitution, and the office of State railway commissioner existed. By the same act of the people that made the amendment a part of the fundamental law, and created the office, these respondents were elected to fill that office. Both matters might properly be submitted to the electors at the same election. This is in accord with universal precedent both in this and in other States.''

We are satisfied both on principle and authority the submission of the proposed charter to the qualified electors of the city of Flint for ratification or rejection, and the election of officers thereunder as provided for in the proposed charter is not only constitutional but valid. In pursuance of Court Rule No. 60, §§ 4, 5 (1933), a writ of mandamus will issue directing the dissolution of the injunction granted, and directing the city clerk to proceed with the election of officers in accordance with the proposed charter to be submitted, but without costs, the matter being one of public interest.

Nelson Sharpe, C. J., and North, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.