TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

| | : | |
|---|---|---|
| OPINION | : | No. 16-702 |
| | : | |
| of | : | August 23, 2018 |
| | : | |
| XAVIER BECERRA | : | |
| Attorney General | : | |
| | : | |
| MANUEL M. MEDEIROS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE MARK L. NATIONS, KERN COUNTY COUNSEL, has requested an opinion on the following question:

Does Elections Code section 10515, subdivision (a), require a board of supervisors to appoint a director to a water district if to do so would result in the appointee holding incompatible public offices under Government Code section 1099?

CONCLUSION

Elections Code section 10515, subdivision (a), requires a board of supervisors to appoint a director to a water district without regard to whether the appointment might result in the holding of incompatible offices under Government Code section 1099. Nonetheless, an individual so appointed may not lawfully hold incompatible public offices; thus, if the particular offices are incompatible, the appointee and would-be dual officeholder will be deemed to have forfeited the first-held office upon accepting appointment to the second.

1

ANALYSIS

We are informed that two adjoining water districts located in Kern County (County) scheduled at-large general elections for their respective boards of directors. A director on each water district board filed a declaration of candidacy for election to the other district. No other declarations of candidacy were filed in either district within the time for filing. Elections Code section 10515 governs water district elections,[1] and provides that, in such a circumstance—and where a sufficient number of voters do not petition for an election be conducted anyway—an unopposed candidate may request that, in lieu of holding a pro forma election, the "supervising authority" (here, the County's board of supervisors) appoint him or her to the seat for which he or she declared candidacy.[2]

Both unopposed candidates sought appointment under Elections Code section 10515, but the County Registrar of Voters raised concerns about whether the appointments

---

[1] Water Code section 35100 provides that "District elections shall be conducted in conformity with the Uniform District Election Law (Part 4 (commencing with Section 10500) of Division 10 of the Elections Code) and any provisions of law generally applicable to districts organized under this division [related to water districts]."

[2] Section 10515 provides, in pertinent part, as follows:

(a) If, by 5 p.m. on the 83rd day prior to the day fixed for the general district election: . . . (3) in the case of directors to be elected from the district at large, the number of persons who have filed a declaration of candidacy for director at large does not exceed the number of offices of director at large to be filled at that election . . . ; and if a petition signed by 10 percent of the voters or 50 voters, whichever is the smaller number, in the district . . . requesting that the general district election be held has not been presented to the officer conducting the election, he or she shall submit a certificate of these facts to the supervising authority and request that the supervising authority, at a regular or special meeting held prior to the Monday before the first Friday in December in which the election is held, appoint to the office or offices the person or persons, if any, who have filed declarations of candidacy. The supervising authority shall make these appointments.

(b) If no person has filed a declaration of candidacy for any office, the supervising authority shall appoint any person to the office who is qualified on the date when the election would have been held. The person appointed shall qualify and take office and serve exactly as if elected at a general district election for the office.

2

would create incompatibility-of-office issues under Government Code section 1099, subdivision (a),[3] and we are informed that, because of the Registrar's concerns, the County's board of supervisors did not make the appointments.

Here we are asked whether the board of supervisors may properly decline to make appointments to the director positions based on a concern over incompatibility of offices—i.e., despite the facially mandatory language of Elections Code section 10501, subdivision (a), which states that the "supervising authority shall make these appointments." We conclude that the board may not decline to make the appointments based on this concern, but hasten to add that incompatible dual office-holding—if that is indeed the result of such appointments—is nonetheless impermissible and carries specified legal consequences. Our analysis follows.

First, we think it important to clarify what is *not* at issue here. County Counsel has not asked *whether* the simultaneous occupancy of both director positions would amount to a holding of incompatible offices. The question of incompatibility requires consideration of the facts and circumstances of the individual case.[4] "The doctrine springs from

_____

[3] That statute provides:

(a) A public officer, including, but not limited to, an appointed or elected member of a governmental board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible. Offices are incompatible when any of the following circumstances are present, unless simultaneous holding of the particular offices is compelled or expressly authorized by law:

(1) Either of the offices may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over the other office or body.

(2) Based on the powers and jurisdiction of the offices, there is a possibility of a significant clash of duties or loyalties between the offices.

(3) Public policy considerations make it improper for one person to hold both offices.

In the circumstance presented to us, the asserted incompatibility would arise from simultaneous occupancy of seats on two different water district boards within the county. However, an incompatibility concern assertedly justifying refusal to appoint might also arise if, for example, the candidate for appointment held another office within state or local government.

[4] See, e.g., 98 Ops.Cal.Atty.Gen. 94 (2015) (simultaneous service on water replenishment district board and city council); 97 Ops.Cal.Atty.Gen. 50 (2014) (simultaneous service on fire protection district and community services district boards);

3

considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[5]  We have not been informed of the relationship between the two water districts, or of how the two districts might interact, or of how the duties of a director in respect to one district might be incompatible with his or her duty of loyalty to the other district.  For purposes of analysis, however, we will assume that the board of supervisors could entertain a reasonable concern that the simultaneous occupancy of the two offices would run afoul of Government Code section 1099, subdivision (a).

In construing section Elections Code 10515, subdivision (a) (hereafter "section 10515(a)"), we apply settled principles of statutory construction.  Our task "is to ascertain the intent of the Legislature so as to effectuate the purpose of the law."[6]  We start with the words of the statute themselves, "giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose."[7]  Where the plain meaning does not resolve a question of interpretation, we may consider legislative history and, if ambiguity persists, we may consider the consequences that will flow from a particular interpretation.[8]

---

93 Ops.Cal.Atty.Gen. 144 (2010) (simultaneous service on sanitary district and park and recreation district boards); 91 Ops.Cal.Atty.Gen. 25 (2008) (simultaneous service on water replenishment district board and city council); 90 Ops.Cal.Atty.Gen. 12 (2007) (simultaneous service on Metropolitan Water District of Southern California and Water Replenishment District of Southern California); 87 Ops.Cal.Atty.Gen. 153 (2004) (simultaneous service on water district and school district boards); 86 Ops.Cal.Atty.Gen. 205 (2003) (simultaneous service on irrigation district board and board of supervisors); 82 Ops.Cal.Atty.Gen. 74 (1999) (simultaneous service on water district board and city council); 80 Ops.Cal.Atty.Gen. 242 (1997) (simultaneous service as city treasurer and director of water district); 76 Ops.Cal.Atty.Gen. 81 (1993) (simultaneous service on San Gregorio Pass Water Agency board and Beaumont-Cherry Valley Water District board); 75 Ops.Cal.Atty.Gen. 10 (1992) (simultaneous service on water district board and city council); 73 Ops.Cal.Atty.Gen. 268 (1990) (simultaneous service on school district board and water district board).

[5] 68 Ops.Cal.Atty.Gen. 337, 339 (1985); see also 63 Ops.Cal.Atty.Gen. 623, 625 (1980); 17 Ops.Cal.Atty.Gen. 129, 130 (1951).

[6] *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.

[7] *Ibid.*

[8] *Skillin v. Rady Children's Hospital-San Diego* (2017) 18 Cal.App.5th 35, 47; *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1540.

4

Generally speaking, the rule with California codes is that "shall" is mandatory and "may" is permissive. The general rule applies unless otherwise apparent from context; or unless a mandatory construction would be inconsistent with the statute's legislative purpose or would imply an unreasonable legislative purpose; unless legislative history shows otherwise;[9] or unless other factors compel a different construction.[10]

Section 10515(a) is not unique. Similar provisions, providing for appointments to office in the event of a lack of nominees, exist elsewhere in the codes.[11] Indeed, similar statutes are common throughout the nation.[12] The manifest purpose of these statutes is to fill a vacancy in an elective office expeditiously when election is not a practical or efficient option, either because of a lack of candidates or because the candidates would run uncontested.[13]

---

[9] *Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605, 614 (unless context requires otherwise); *In re Sergio R.* (2003) 106 Cal.App.4th 597, 605 (same); see also *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 194 (unless mandatory construction would imply an unreasonable legislative purpose); *In re A.V.* (2017) 11 Cal.App.5th 697, 710 (unless mandatory construction would be inconsistent with the statute's purpose); *Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 178 (same); *Ovadia v. Abdullah* (1994) 24 Cal.App.4th 1100, 1109 (unless legislative history shows otherwise); 97 Ops.Cal.Atty.Gen. 57, 59 (2014) ("shall" is ordinarily construed as mandatory except under unusual circumstances, such as when that construction would defeat the purpose of the statute); Elec. Code, § 354 ("shall" is mandatory; "may," permissive).

[10] See, e.g., *Garrison v. Rourke* (1948) 32 Cal.2d 430 (statute providing that court in election contest "shall" file findings and conclusions within ten days of submission thereof is not mandatory, notwithstanding Election Code definition of "shall," since construction of the statute as mandatory would result in divesting court of jurisdiction by implication); see also *Hagopian v. State* (2014) 223 Cal.App.4th 349, 366 (manifest public purpose of statute would be disserved by mandatory construction).

[11] See, e.g., Ed. Code, §§ 5326, 5328 (school district governing board), 19514 (library district); Elec. Code, §§ 7228 (political party central committees), 10229 (municipal elections); Pub. Res. Code, § 5532 (Regional Park district); (Pub. Util. Code, § 11852.5 (municipal utility district); Wat. Code, §§ 41307 (water storage district), 60141 (water replenishment district); see also Wat. Code App., §§ 37-6.2, 98-52, 99-7.1-1 (West); 28 Cal.Jur.3d Elections § 20 (municipal elections).

[12] See *One Person, No Votes: Unopposed Candidate Statutes and the State of Election Law,* 2017 Wis.L.Rev. 885 (2017).

[13] See, e.g., *Binns v. Hite* (1964) 61 Cal.2d 107, 112 (procedures set out in former Elec.

We can find no reason to depart from the general rule calling for a mandatory construction where, as in the circumstances presented to us, an eligible candidate for the vacant seat has properly filed for election.[14] Legislative history is silent on the matter and, accordingly, offers no basis for departing from the general rule. Appointment of the sole declared candidate as a ministerial function appears consistent with the intent of the Legislature.[15]

Notably, the only instance in which section 15105 authorizes the board of supervisors to exercise discretion in the choice of appointee is in the circumstance where *no candidate* has declared for election to the post. In that circumstance, the board of supervisors is given discretion to appoint "*any person to the office who is qualified* on the date when the election would have been held."[16] The Legislature could have allowed the supervisors similarly broad discretion to select any qualified appointee in any circumstance where an election would not test voter support for a candidate—as where the candidate would run unopposed.[17] But the Legislature did not do so. Instead, in such a circumstance, and in the absence of evident desire among the voters to have an election anyway, the Legislature mandated appointment of the only eligible candidate. In that circumstance,

---

Code, § 25304 [see now § 8203] "are without doubt reasonably designed to accomplish the legitimate purposes of the statute . . . includ[ing] simplification of an otherwise unduly long and confusing ballot by elimination of uncontested offices, reduction in the length of the ballot, facilitation of vote tabulation, and reduction of election costs").

[14] The qualifications of a candidate for elective office, or of an elective officer, of a water district are determined by the principal acts for those districts. (Wat. Code, § 10514.) For example, in order to be eligible for office of director of a California Water District, a candidate must be a holder of title within the district. (Wat. Code, § 40307.) A director of the Sutter County Flood Control and Water Conservation District must be an eligible voter of that district. (Wat. Code App., § 125-203 (West).) The county election officer examines the declaration of candidacy and certifies that it is sufficient and conforms with the provisions of the Uniform District Election Law. (Elec. Code, § 10513.)

[15] By way of contrast, in the case of municipal elections with either no candidate or an unopposed candidate, the Legislature gives the city council the option to conduct the election anyway. (Elec. Code, § 10229, subd. (a)(3); see also Pub. Util. Code, § 11852.5, subd. (a)(3) [municipal utilities districts].)

[16] Elec. Code, § 10105, subd. (b) (emphasis added); see also Wat. Code App., § 37-6.2 ("any qualified person"); Wat. Code, § 41307 (appointment of "a person who the board of supervisors selects").

[17] See, e.g., Ed. Code, § 5328 (appointment of "a qualified person or persons" when there is an "insufficient number" of nominees).

then, we may not read into the statute any qualification for appointment other than eligibility for candidacy.[18]

Our analysis cannot end there, however. Although the board of supervisors is statutorily required to appoint the unopposed candidates under the circumstances contemplated here, it is nonetheless unlawful for an individual to simultaneously hold two incompatible public offices.[19] Thus, although we are not asked to resolve the incompatibility issue itself, we find it appropriate to advise that *if* the offices in question are legally incompatible, the appointed officials must either decline appointment to the second offices to which they would be appointed, or, if they choose to accept that appointment, they will forfeit their right to hold their original offices.[20] The parties involved should carefully consider whether service on both boards would present a legal incompatibility, what options are available, and the potential consequences.

If there is doubt about whether the offices in question are legally incompatible, there is an established post-appointment judicial remedy available to test the compatibility of the offices.[21] Subdivision (b) of Government Code section 1099 expressly provides that the statutory proscription against holding incompatible offices is enforceable pursuant to

---

[18] See *Artus v. Gramercy Towers Condominium Association* (2018) 19 Cal.App.5th 923, 945 (not the role of courts to add statutory provisions the Legislature could have included, but did not); cf., *Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 189 (if Legislature had intended more than one party to qualify as a prevailing party under the mandatory cost-award provision, it easily could have provided for the trial court to exercise discretion to award costs to more than one party); 99 Ops.Cal.Atty.Gen. 82, 84 (2016) ("We may not, under the guise of construction, attempt to rewrite a statute and, within the framework of the language used, we must interpret it in a manner to make it workable and reasonable"); 99 Ops.Cal.Atty.Gen. 61, 65 & fn. 28 (2016) ("It is not for us to rewrite the statute so as to disqualify an otherwise eligible official based on another person's financial interest"); see also 87 Ops.Cal.Atty.Gen. 168, 171 (2004).

[19] Gov. Code, § 1099, subd. (a).

[20] See Gov. Code, § 1099, subd. (b).

[21] We also note that in *Fenton v. Board of Directors* (1984) 156 Cal.App.3d 1107, a community services district refused to seat a director that the board of supervisors had appointed, on the ground that the appointee was not qualified as a resident of the district. Whether or not a similar action would be within the jurisdiction of one or the other water districts here is a question beyond the scope of this opinion. (Cf. 41 Ops.Cal.Atty.Gen. 98, 100 (1963) [re city council's power to judge the qualifications of its members; Gov. Code, § 36812].)

section 803 of the Code of Civil Procedure. This procedure, commonly known as quo warranto,[22] is ordinarily brought by a private person or a local agency in the name of the Attorney General to test title to public office.[23]

Quo warranto is a remedy commonly used to test incompatible holding of district offices.[24] Again, in the event that two offices are adjudged to be incompatible, the would-be dual office holder is deemed to have forfeited the first office upon accepting the second.[25] Accordingly, an interested member of the public or a local agency may seek leave to initiate a quo warranto proceeding to declare the first office vacant. A proceeding in quo warranto must be supported by factual allegations demonstrating the disabling incompatibility.[26] The challenged office holder is permitted to file a response and contest the alleged facts.[27]

Section 10515(a) is mandatory by its terms, and no justification appears in either the statutory context or in the legislative history for construing the statute to be other than mandatory. We therefore conclude that the statute requires the board of supervisors to appoint a director to a water district without regard to whether the appointment might subsequently result in the holding of incompatible public offices under Government Code section 1099. Nonetheless, an individual so appointed may not lawfully hold incompatible public offices; thus, if the particular offices are incompatible, the appointee and would-be dual officeholder will be deemed to have forfeited the first-held office upon accepting appointment to the second.

*****

---

[22] See, e.g., *Alden v. Superior Court in and for San Luis Obispo County* (1963) 212 Cal.App.2d 764, 768.

[23] See, e.g., *Nicolopulos v. City of Lawndale* (2011) 91 Cal.App.4th 1221, 1225-1226. The common law action has been available since statehood to test incompatibility of offices. (See, e.g., *People by McCullough ex rel. Simmons v. Sanderson* (1866) 30 Cal. 160; *People ex rel. Johnson Atty. Gen. v. Bagley* (1890) 85 Cal. 343.)

[24] See note 5 *ante*.

[25] 97 Ops.Cal.Atty.Gen. 50, 52 & fn. 12 (2014).

[26] See Cal. Code Regs., tit. 11, §§ 1, 2, 4.

[27] Cal. Code Regs., tit. 11, § 3.

16-702